**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| **RANDALL W. ENYEART and RODNEY A. MATTMILLER,** | |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW AND ORDER** |
| **STATE OF MINNESOTA; MICHAEL A. HATCH; DAN SALOMONE; DONALD H. RUMSFELD; ALBERTO GONZALES; and NORMAN Y. MINETA,** | **Civil No. 05-1291 (MJD/AJB)** |
| Defendants. | |

Randall W. Enyeart and Rodney A. Mattmiller, pro se.

John S. Garry, Assistant Attorney General, on behalf of the State of Minnesota, Michael A. Hatch, and Dan Salomone.

Joan D. Humes, Assistant United States Attorney, on behalf of Donald H. Rumsfeld, Alberto Gonzales, and Norman Y. Mineta.

**I.     INTRODUCTION**

In this action, Plaintiffs seek declaratory judgments against both the State of Minnesota and the federal government. Plaintiffs seek a declaratory judgment under 42 U.S.C. § 1983 that the Minnesota Court of Appeals wrongly decided issues in affirming their state court convictions for tax evasion. Plaintiffs also seek a declaratory judgment as to how 49 U.S.C. § 40116 should be enforced by the federal government.

Currently before the Court are Defendants' motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure. Because the Court

lacks subject matter jurisdiction and Plaintiffs have failed to state a claim upon which relief can be granted, Defendants' motions are granted.

## II.     FACTUAL BACKGROUND

Plaintiffs, Randall W. Enyeart ("Enyeart") and Rodney A. Mattmiller ("Mattmiller") are former commercial airline pilots with Northwest Airlines ("NWA").  The State of Minnesota charged Plaintiffs with filing fraudulent tax returns, tax evasion, and failure to pay motor vehicle taxes.  Plaintiffs claimed that they were not domiciled in Minnesota and therefore were not subject to Minnesota state taxation.

In December 1997, Enyeart electronically changed his residency from Minnesota to Alaska on an NWA computer.  Alaska does not have a state income tax.  Enyeart did not file Minnesota income tax returns in 1999 and 2000 because he regarded Alaska as his domicile.  Similarly, Mattmiller claimed Washington as his state of residence.  Mattmiller's flight base was Minneapolis from 1992 until 2001.  Washington also does not have a state income tax.

Plaintiffs were tried in separate jury trials.  Both Plaintiffs brought pretrial motions claiming that they were not residents of Minnesota and that 49 U.S.C. § 40116 ("Section 40116") preempted the state's method for determining state tax liability.  The state district court denied Plaintiffs' motions.

Plaintiffs were convicted and filed direct appeals. Plaintiffs again argued that Section 40116 preempts Minnesota's method for calculating days spent in Minnesota for cases involving airline employees. The statute provides that:

> The pay of an air carrier having regularly assigned duties on aircraft in at least 2 States is subject to the income tax law of only the following:
>
> (A) the State or political division of the State that is the residence of the employee.
>
> (B) the State or political subdivision of the State in which the employee earns more than 50 percent of the pay received by the employee from the carrier.

49 U.S.C. § 40116 (f)(2)(A), (B). Section 40116 does not define residence or domicile. Airline employees are deemed to have earned 50 percent of their pay in a State in which their scheduled flight time in the State is more than half of the total scheduled flight time during the calendar year. 49 U.S.C. § 40116 (f)(1)(C).

Under Minnesota law, a "resident" is "any individual domiciled in Minnesota." Minn. Stat. § 290.01, subd. 7(a) (2002). A resident is also any individual "domiciled outside the state who maintains a place of abode in the state and spends the aggregate more than one-half of the tax year in Minnesota." <u>Id.</u> at subd. 7(b). Presence within Minnesota for any part of the calendar day constitutes a day spent in the state. <u>Id.</u> However, "a person in transit between two points outside Minnesota who is physically present in Minnesota less than 24

3

hours, will <u>not</u> be treated as present in Minnesota on any day during transit." Minn. R. 8001.0300, subd. 4 (2001) (emphasis added).

The Minnesota Court of Appeals found that the record in each case contained substantial evidence that Plaintiffs were Minnesota residents, and were therefore required to pay Minnesota taxes.  Enyeart continued to live in his house located in Minnetonka, Minnesota until 1999.  In April 1999, Enyeart purchased a townhouse in Shorewood, Minnesota.  Plaintiff Enyeart also made numerous declarations that he was the sole owner of the townhouse and that the townhouse was his principal residence.  In September 1999, Enyeart's flight base moved from Minneapolis to Detroit, Michigan.  Enyeart continued to claim Alaskan residency while he was based out of Detroit.  During this time, Enyeart either listed his Minnetonka or Shorewood addresses as his current address on his checks, loan applications, medical certificates of fitness, and on school emergency cards for his children.

The Minnesota Court of Appeals also found that the number of days Enyeart spent in Alaska showed that he was domiciled in Minnesota.  Enyeart did keep a condominium in Alaska, but he kept no personal belongs there.  In 1998, Enyeart spent 194 days in Minnesota and twelve days in Alaska.  In 1999, he spent 144 days in Minnesota and two days in Alaska.  And in 2000, Enyeart spent two partial days in Alaska and 186 days in Minnesota.  Between 1998 and December 2000, Enyeart made 240 ATM transactions in Minnesota and three in

Alaska.  In December 2000, Enyeart told Hennepin County officials that he had been a Minnesota resident for the past ten years.  The court concluded that these facts clearly reflected Enyeart's intention to remain in Minnesota.

Correspondingly, Mattmiller claimed Washington as his state of residency, but did not own or rent any real property in Washington.  From 1991 until 2001, Mattmiller was based out of Minneapolis, Minnesota.  The court found that Mattmiller owned a house in Hastings, Minnesota where he resided with his wife and children.  Mattmiller and his wife shared a checking account but maintained separate checkbooks.  Mattmiller's checks were printed with the Washington address, while his wife's checks were printed with the Hastings, Minnesota address.

The Minnesota Court of Appeals rejected Plaintiffs' argument that Section 40116 preempted Minnesota state law.  The Minnesota Supreme Court and the United States Supreme Court denied hearing Enyeart's and Mattmiller's appeals. State v. Enyeart, 676 N.W.2d 311, 325 (Minn. Ct. App. 2004), rev. denied (Minn. May 18, 2004), cert. denied, 125 S. Ct. 310 (2004); State v. Mattmiller, No. A03-472, 2004 WL 1244040, at *6 (Minn. Ct. App., June 8, 2004) (unpublished), rev. denied, (Minn. Aug 17, 2004), cert. denied 125 S. Ct. 663 (2004).

> Enyeart argues that state law conflicts with the federal statute by equating residency with physical presence in the state and thereby allowing taxation by more than the state of residency or the state where the employee earns more than fifty percent of his or her pay from the airline.

5

But state law does not equate residency with mere physical presence. On the contrary, it <u>precludes</u> such an equation by requiring that in determining the number of days spent in the state, time spent by a taxpayer in transit not be counted as time spent in Minnesota. Contrary to Enyeart's argument, a person's mere presence in the state does not render him or her liable to state taxation. Instead, presence in the state counts only if the person subject to taxation remains in the state for more than twenty-four hours.

Enyeart also argues that state law thwarts or stands as an obstacle to the federal statute's objective of limiting multistate taxation. But by providing that a person in transit between two points outside Minnesota who spends less than twenty-four hours in the state will not be treated as present within the state, the rule avoids taxing air-carrier employees with minimal or transitory contacts with the state and thereby furthers the federal goal of avoiding multistate taxation.

Enyeart urges this court to read the federal statute to preclude a state from considering any part of a day in which an air-carrier employee works in Minnesota as a day spent in the state, claiming that a different reading would allow the state to tax income generated from less than fifty percent of scheduled flight time. But the state's residency requirements are not based on a pilot's scheduled flight time within the state but on the pilot's physical presence in the state for at least twenty-four hours, enjoying the services and protections the state affords. A rule that would make residence contingent on flight time would unduly limit the state's legitimate interest in taxing state residents, an interest the federal statute expressly recognizes by permitting states to tax pilots who are residents.

Because is not in "irreconcilable conflict" with 49 U.S.C. § 40116, it is not preempted.

Enyeart, 676 N.W.2d at 324-25 (emphasis in the original) (citations omitted).

Now, in this action, Plaintiffs seek declaratory judgment against the State of Minnesota and the federal government.  First, Plaintiffs seek declaratory relief under 42 U.S.C. § 1983, arguing that the Minnesota Court of Appeals wrongly decided issues in affirming their state court convictions.  Plaintiffs also sue the Secretary of Defense, Secretary of Transportation, and the United States Attorney General for a declaratory judgment that one or more of these officials is responsible for promulgating regulations under 49 U.S.C. § 40116.  For the reasons set forth below, the Court grants Plaintiffs' motions to dismiss.

## III.   DISCUSSION

### A.    Standards of Review

#### 1.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), the moving party may challenge a complaint on its face or make a "factual attack" outside of the pleadings.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Here, Defendants challenge the complaint on its face.  If the moving party makes a facial challenge, the Court restricts its review to the face of the pleadings, and the nonmoving party receives the same protections as it would defending a motion for failure to state a claim.  Id.

Dismissal for lack of subject matter jurisdiction should not be granted lightly.  Wheeler v. St. Louis Sw. Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted).  However, dismissal is proper in a facial attack if the complaint

7

fails to allege any basis for subject matter jurisdiction.  Id.  The plaintiff bears the burden of establishing subject matter jurisdiction.  Nucor Corp. v. Neb. Pub. Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989).

### 2. Motion to Dismiss for Failure to State a Claim

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court should grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Handeen v. Lemaire, 112 F.3d 1339, 1347 (8th Cir. 1997).  "In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true."  WMX Tech., Inc. v. Gasconade County, Mo., 105 F.3d 1195, 1198 (8th Cir. 1997).

### B. Eleventh Amendment

Plaintiffs name the State of Minnesota itself as a Defendant in this action. The Eleventh Amendment bars suits brought by citizens in federal courts against state governments in law or equity.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-98, 100-2 (1984).  Unless Congress unequivocally abrogates sovereign immunity or the state consents, the Eleventh Amendment bars suit against the state.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238-40 (1985).  The Supreme Court has repeatedly held that the Eleventh Amendment

8

bars suits against a state <u>by its own citizens.</u>  <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63 (1974); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890).  The record overwhelmingly shows that both Enyeart and Mattmiller are citizens of Minnesota.  The State of Minnesota has not waived its Eleventh Amendment immunity from Plaintiffs' claims.  Nor did Congress abrogate the state's sovereign immunity in enacting Section 1983.  <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979).  Accordingly, Plaintiffs' Amended Complaint against the State of Minnesota must be dismissed.

### C.     Rooker-Feldman Doctrine

Plaintiffs' complaint against the Attorney General of Minnesota, Michael A. Hatch and the Director of the Minnesota Department of Revenue, Dan Salmone is based upon 42 U.S.C. § 1983.  However, federal courts do not have jurisdiction pursuant to Section 1983 to review state court judgments.  This principle is known as the Rooker-Feldman Doctrine.  <u>See</u> <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983); <u>Rooker v. Fid. Trust. Co.</u>, 263 U.S. 413, 415-16 (1923).  The Rooker-Feldman doctrine provides that, except for habeas corpus petitions, "lower federal courts lack subject matter jurisdiction over challenges to state court judgments."  <u>Mosby v. Ligon</u>, 418 F.3d 927, 931 (8th Cir. 2005) (citation omitted).

This jurisdictional bar divests federal district courts of jurisdiction when losing parties in state court proceedings allege injuries caused by the state court

judgment and seek review of that judgment.  Id.  The doctrine also applies to "indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000).  The Rooker-Feldman Doctrine applies to Section 1983 actions as well as claims for injunctive and declaratory relief.  Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir. 1990).

Under Rooker-Feldman, a federal court does not possess appellate jurisdiction to review a state court judgment, but it may exercise jurisdiction over a general constitutional challenge so long as that constitutional challenge is not "inextricably intertwined" with claims asserted in the state court proceeding.  Id. at 296.  A federal claim is "inextricably intertwined" with prior state court judgments if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987).  The claim is very likely to be "inextricably intertwined" when "federal relief can only be predicated upon a conviction that the state court was wrong." Id.

Plaintiffs' Amended Complaint seeks declaratory relief on the grounds that the Minnesota Court of Appeals incorrectly denied the challenges to their convictions.  Plaintiffs ask the Court for the following remedies:

> To Adjudge and Declare that federal law mandates that, concerning the State of domicile of a commercial air crew member or air carrier employee, what is shown on his or her employer's records is controlling and conclusively binds State officials.  In the event such State

>officials wish to contest that record of domicile, and prior to taking adverse action against the air crew member, the State must first invoke civil procedures to challenge and have modified that record, allowing the employee notice and opportunity to be meaningfully heard.

(Amend. Compl. at ¶ 131 A.)

>To Adjudge and Declare that according to the spirit and intent of the United States Congress in passage of 49 U.S.C. § 40116, and having full consideration of the normal and usual life style [sic] of an air carrier employee, that it is not logical and is inappropriate for a State to utilize the following indicia, and others of similar nature, in attempt to show that an air carrier employee is a resident of that State, or a non-domiciled resident of that State, considering the normal and usual lifestyle of airline pilots and other flight crew members:
>
>(a) The place of employment of an air crew member traveling in interstate commerce.
>
>(b) The State in which he or she maintains an abode.
>
>(c) The State in which charitable contributions are made.
>
>(d) The State in which a professional license is issued.
>
>(e) The location of a union membership.
>
>(f) The location of bank and other financial accounts.
>
>(g) The location where business is transacted.
>
>(h) The location of country clubs and other organizations in which the individual is a member.
>
>(i) Statements made to an insurance company concerning residency.
>
>(j) The place(s) of worship of an air crew member traveling in interstate commerce.

11

(Id. at ¶ 131 O.)

In the state court proceeding, Enyeart challenged Minnesota's domicile rule as unconstitutionally vague. State v. Enyeart, 676 N.W.2d 311, 318-22 (Minn. Ct. App. 2004). Plaintiff Mattmiller's appeal challenged an evidentiary ruling that admitted Minnesota's domicile rule into evidence and his jury instructions. State v. Mattmiller, No. A03-472, 2004 WL 1244040, at *4-5 (Minn. Ct. App. Jun. 8, 2004). The Minnesota Court of Appeals rejected both of Plaintiffs' arguments and held that Plaintiffs were in fact domiciliaries of Minnesota. Enyeart, 676 N.W.2d at 322; Mattmiller, 2004 WL 1244040, at *5-6. Plaintiffs' preemption arguments were likewise rejected in the state court proceedings. Enyeart, 676 N.W.2d at 326; Mattmiller, 2004 WL 1244040, at *6.

Plaintiffs have not specifically asked the Court to overturn their state court convictions. However, granting Plaintiffs' prayer for declaratory relief would necessarily require the Court to determine that the Minnesota Court of Appeals wrongly affirmed of their convictions. "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) (emphasis added).

Plaintiffs claim to only ask for a declaration as to whether Section 40116 is "self-executing." Plaintiffs also ask the Court to "Adjudge and Declare to the

12

extent 49 U.S.C. § 40116 is not self-executing" that Federal Defendants have the authority to enforce, promulgate regulations, or give opinions under the statute. (Id. at ¶ 131 E-G.) (emphasis added.) However, as before noted, Plaintiffs ask the Court to declare that "federal law . . . is controlling and conclusively binds State officials" and that "according to the spirit and intent of the United States Congress . . . it is not logical and is inappropriate" for a State to utilize certain factors to determine domicile. (Id. at ¶ 131 O.) Despite Plaintiffs' clever wording, their claim succeeds only to the extent that the Minnesota Court of Appeals wrongly decided the issues before it. Plaintiffs' preemption argument was heard and rejected by the state district and appellate courts. The Minnesota Court of Appeals held that Minnesota law was not in irreconcilable conflict with Section 40116 and thus federal law did not preempt state law. Because Plaintiffs' Amended Complaint merely rephrases their state court arguments, their claims are inextricably intertwined. Thus, the Rooker-Feldman doctrine deprives this Court of subject matter jurisdiction over Plaintiffs' claim for declaratory relief against the State Defendants.

### D.     Collateral Estoppel

Plaintiffs' claims against the State Defendants are also jurisdictionally barred due to collateral estoppel. Collateral estoppel is appropriate when: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party in the previous action; and (4)

13

the estopped party was given a full and fair opportunity to be heard on the adjudicated issues.  Minneapolis Comm. Dev. Agency v. Buchanan, 268 F.3d 562, 566 (8th Cir. 2001).  Matters litigated and decided in state court cannot be relitigated in federal court, including subsequent Section 1983 actions.  Allen v. McCurry, 449 U.S. 90, 103-04 (1980).

The issues upon which Plaintiffs seek declaratory relief against the State Defendants are the same or essentially the same issues that Plaintiffs raised in their state appeals.  Plaintiffs cannot relitigate the issue of whether Section 40116 preempts Minnesota tax regulations.  Plaintiffs have had a full and fair opportunity to litigate this primary issue as their preemption argument was heard and rejected by the Minnesota Court of Appeals.  Thus, Plaintiffs are estopped from raising these issues again before federal court.

### E.    Waiver of Sovereign Immunity and the Administrative Procedures Act

Generally, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  No suit may be brought against the United States, as sovereign, unless Congress consents to such suit.  Tuscon Airport Auth. v. General Dynamics Corp, 136 F.3d 641, 644 (9th Cir. 1998).  "Unless the lawsuit is of a kind that Congress has chosen to allow, the government is usually dismissed from the case without a trial."  Claude v. Smola, 263 F.3d 858, 860 (8th Cir. 2001).

14

A well-established exception to the principle of sovereign immunity is that suits for injunctive or declaratory relief against the United States government or federal officers are permitted under the Administrative Procedures Act ("APA"). The APA provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief <u>other than money damages</u> and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority <u>shall not be dismissed nor relief therein be denied on the ground that it is against the United States</u> or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added). The APA is an express waiver of sovereign immunity in suits requesting non-monetary relief.

On November 17, 2005, Plaintiffs filed a motion to amend their complaint to allege jurisdiction under the Sections 701-706 of the APA because they are only seeking declaratory relief. Leave to amend a complaint after the initial time allowance "shall be freely given when justice so requires." Fed. R. Civ. P. 15. Still, the Court denies Plaintiffs' motion to amend because it would be futile.

Even under the APA, federal courts cannot review agency decisions that are discretionary. 5 U.S.C. § 701(a)(2). Section 701(a)(2) is a very narrow exception that is only applicable when the statute in question is drawn in such broad terms that there is no law to apply. <u>Heckler v. Chaney</u>, 470 U.S. 821, 830

(1985).  However, when the plaintiff alleges that the federal government has failed to act, there is no presumption that judicial review is available.  See id. at 831.  "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  Id.  See also Minnesota Milk Producers Ass'n v. Glickman, 153 F.3d 632, 642 (8th Cir. 1998) (noting that an agency's decision to do nothing is entitled to more deference than a decision to act).  The decision not to act may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."  Heckler, 470 U.S. at 832-33.

      The Office of the Secretary of Transportation provides for the Federal Aviation Administration ("FAA") and is responsible for promulgating and enforcing the FAA's rules and regulations.  49 C.F.R. § 1.4.  The Secretary of Transportation is responsible for administering Section 40116 but the statute imposes no specific obligations on the Secretary.  On the contrary, the general provisions of Title 49 provides that:  "The Secretary of Transportation . . . may take action the Secretary, Under Secretary, or Administrator, as appropriate, considers necessary to carry out this part, including conducting investigations, prescribing regulations, standards, and procedures, and issuing orders."  49 U.S.C. § 40113 (a) (emphasis added).  Plaintiffs ask the court to declare that it is within the authority of the Secretary of Transportation to promulgate regulations pertaining to 49 U.S.C. § 40116.  The Court does not dispute this.  However,

Plaintiffs further ask for a declaration that federal law mandates that the employer's records "conclusively binds" state determinations of domicile.

Here, the Court must defer to the agency's decision not to act. Section 40113 gives the Secretary of Transportation clear discretion to take action deemed appropriate or necessary. The Secretary has not prescribed any regulations, standards or procedures regarding Section 40116(f). This non-exercise of power is entirely appropriate and well within the Secretary's congressional grant of discretionary authority. See Heckler, 470 U.S. at 831. Plaintiffs have not offered, nor has the Court found, agency guidelines for the enforcement of Section 40116. See id. at 832-33. "An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." Id. at 831-32. Therefore, the Court is without subject matter jurisdiction to hear Plaintiffs' claim because it involves a question of agency discretion.

### F.     Failure to State a Claim

Plaintiffs also fail to state a claim upon which relief can be granted. There is no private cause of action under the Federal Aviation Act. The Court will create a private right of action only if there is affirmative evidence of Congress's intent to create a private cause of action. Touche Ross & Co. v. Redington, 442 U.S. 560, 578-79 (1979). Absent the most compelling evidence, a court should not take

17

pains to infer a private cause of actions.  See Cannon v. Univ. of Chicago, 441 U.S. 677, 731 (1979).

Plaintiffs cannot allege a private cause of action under the Federal Aviation Act.  Plaintiffs have not offered any compelling evidence that Congress intended to create a private cause of action.  It is not the province of the Court to create private causes of action when Congress has remained silent or granted discretion to a federal agency.  Therefore, Plaintiffs have alleged no cognizable cause of action against Federal Defendants.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. State Defendants' Motion to Dismiss [Docket No. 6] is **GRANTED.**

2. Federal Defendants' Motion to Dismiss [Docket No. 11] is **GRANTED.**

3. Plaintiffs' Amended Complaint [Docket No. 2] is **DISMISSED WITH PREJUDICE.**

4. Plaintiffs' Motion to Realign Parties [Docket No. 19] is **DISMISSED AS MOOT.**

5. Plaintiffs' Motion to Strike Response in Opposition [Docket No. 24] is **DISMISSED AS MOOT.**

6. Plaintiffs' Motion to Amend Complaint [Docket No. 26] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 6, 2006               s/ Michael J. Davis
                                     Judge Michael J. Davis
                                     United States District Court